USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/28/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JUSTIN BLANE MCKENZIE,

                        Plaintiff,

       -against-

ANDREW SAUL,
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
----------------------------------------------------------X
**PAUL E. DAVISON, U.S.M.J.**

**DECISION AND ORDER**

19 Civ. 3442 (PED)

       Plaintiff Justin McKenzie brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final determination of the Commissioner of Social Security (the "Commissioner") denying his application for disability benefits. This case is before me for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c) (Dkt. #15).

       Presently before this Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. #19 (plaintiff's motion), #20 (plaintiff's memorandum of law), #21 (defendant's cross-motion), #21 (defendant's memorandum of law) and #23 (plaintiff's reply)). Plaintiff argues, as the basis for his motion, that the Administrative Law Judge ("ALJ") failed to provide "good reasons" for rejecting the opinion of plaintiff's treating psychiatrist, Dr. Yvelyne Abellard. Dkt. #20, at 11-16. Defendant asserts, in response, that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. Dkt. #22, at 15-24. For the reasons set forth below, plaintiff's motion is **GRANTED** and defendant's motion is **DENIED**.

## II. BACKGROUND

The following facts are taken from the administrative record ("R.") of the Social Security Administration, filed by defendant on August 8, 2019 (Dkt. #16).[1]

A. Application History

On or about September 26, 2016, plaintiff filed an application for Supplemental Security Income ("SSI") benefits, alleging that he had been disabled since December 14, 2015 due to depression, a learning disorder and anxiety. R. 137-45, 169. His claim was administratively denied on or about December 7, 2016. R. 78, 82. Plaintiff requested a hearing before an ALJ; a hearing was held on June 15, 2018 before ALJ Vincent M. Cascio. R. 84, 35-65. Plaintiff appeared with counsel and testified at the hearing. R. 38, 42-56.[2] On July 27, 2018, the ALJ issued a written decision in which he concluded that plaintiff had not been under a disability within the meaning of the Social Security Act ("SSA") since September 26, 2016 (the date of his application). R. 15-25.[3] The ALJ's decision became the final order of the Commissioner on March 5, 2019, when the Appeals Council denied plaintiff's request for review. R. 1-5. This action followed.

B. Dr. Abellard's Opinion

On May 30, 2017, Psychiatrist Yvelene Abellard completed a Psychological Functional

---

[1] The Court conducted a plenary review of the entire administrative record, familiarity with which is presumed. In light of plaintiff's narrow challenge to the ALJ's decision, I assume knowledge of the facts surrounding plaintiff's medical treatment and do not recite them in detail, except as germane to the analysis set forth below.

[2] Vocational expert Linda Stein also testified at the hearing. R. 56-63.

[3] SSI benefits are not payable prior to the month following the month in which the application for SSI benefits is filed. 20 C.F.R. § 416.335.

Capacity Assessment. R. 318-24. She indicated that she had been treating plaintiff monthly since February 19, 2015 and last examined him on May 30, 2017. R. 318. Dr. Abellard noted that plaintiff "has been displaying gross fluctuations in mood and behavior" during his course of treatment, and "has [a] tendency to be hypertalkative, anxious and inattentive." R. 319. The doctor estimated that plaintiff would be absent from work more than three times a month due to severe anxiety, irritability, depression, low frustration tolerance and regressive behavior in response to stressful situations. R. 320. Dr. Abellard rated plaintiff's capabilities to perform basic mental activities of work on a day-to-day basis in a regular work setting as follows:

>Unlimited/Very Good
>-adhere to basic standards of neatness and cleanliness
>-travel in unfamiliar place
>-use public transportation
>
>Fair
>-remember work-like procedures
>-understand/remember/carry out very short, simple instructions
>-make simple work-related decisions
>-ask simple questions or request assistance
>-accept instructions and respond appropriately to criticism from supervisors
>-get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes
>-interact appropriately with the general public
>-maintain socially appropriate behavior
>
>Inadequate
>-maintain attention for two-hour segment
>-maintain regular attendance and be punctual within customary, usually strict tolerances
>-sustain an ordinary routine without special supervision
>-work in coordination with or proximity to others without being unduly distracted
>-complete a normal workday/workweek without interruptions from psychologically-based symptoms
>-perform at a consistent pace without an unreasonable number and length of rest periods
>-respond appropriately to changes in a routine setting

>   -deal with normal work stress
>   -be aware of normal hazards and take appropriate precautions

R. 321-23. Dr. Abellard opined that plaintiff has moderate restrictions in activities of daily living ("ADLs"), moderate difficulties in maintaining social functioning and frequent deficiencies of concentration, persistence or pace. R. 323. Additionally, Dr. Abellard opined that plaintiff would have repeated episodes of deterioration/decompensation in work or work-like settings which would cause him to withdraw from that situation or to experience exacerbation of signs and symptoms. Id.

By letter dated June 6, 2018, Dr. Abellard stated that she had reviewed her May 30th Functional Capacity Assessment and opined that plaintiff "continues to exhibit the symptoms noted in his evaluation with signs of deterioration." R. 400.

C. The ALJ's Assessment of Dr. Abellard's Opinion

>   The ALJ gave "little weight" to Dr. Abellard's assessment:
>
>   [S]uch severe limitations are inconsistent with the successive series of good mental status examinations contained in the therapy records in Exhibit 13F and are not supported by the claimant's reported activities of daily living. Indeed, claimant testified that he can drive but has no motor vehicle. The ability to drive demonstrates concentration and persistence as well as an ability to deal with the stress inherent in the operation of a motor vehicle. The ability to drive also shows a good degree of concentration and persistence – attributes necessary to work effectively[.] Moreover, he has the mental wherewithal to care for his disabled mother (Exhibit 7E).

## II. STANDARD OF REVIEW

In reviewing a decision of the Commissioner, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). See 42 U.S.C. § 1383(c)(3). "It is not the function of a

reviewing court to decide *de novo* whether a claimant was disabled." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). Rather, the court's review is limited to "'determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard.'" Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (quoting Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)).

The substantial evidence standard is "even more" deferential than the "'clearly erroneous' standard." Brault v. Soc. Sec. Admin, 683 F.3d 443, 448 (2d Cir. 2012). The reviewing court must defer to the Commissioner's factual findings and the inferences drawn from those facts, and the Commissioner's findings of fact are considered conclusive if they are supported by substantial evidence. See 42 U.S.C. § 405(g); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence is "'more than a mere scintilla'" and "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

"However, where the proper legal standards have not been applied and 'might have affected the disposition of the case, the court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal.'" Velez v. Colvin,

No. 14 Civ. 3084, 2017 WL 1831103, at *15 (S.D.N.Y. June 5, 2017) (citing Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004)). Thus, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear in relation to the record evidence, remand to the Commissioner "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996).

### III. DISCUSSION

"Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019). "First, the ALJ must decide whether the opinion is entitled to controlling weight." Id. The ALJ must give controlling weight to a treating physician's opinion as to the nature and severity of the impairment if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)). If a treating physician's opinion is contradicted by or inconsistent with other substantial evidence in the record, the ALJ may give that treating source's opinion less weight. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

Second, if the ALJ does not give controlling weight to a treating source's opinion, the ALJ must consider various factors and provide "good reasons" for the weight given. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); see also Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015). These "nonexclusive *Burgess* factors [include]: (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the

consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Estrella, 925 F.3d at 95-96 (quotation marks and citations omitted). In order to override an opinion from a treating physician, the ALJ must "explicitly consider" the *Burgess* factors. Greek, 802 F.3d at 375 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error." Estrella, 925 F.3d at 96. If the ALJ has not otherwise provided "good reasons" for the weight accorded to a treating physician's opinion, the case must be remanded unless "a searching review of the record" assures the Court that the ALJ applied "the substance of the treating physician rule." Id.[4]

Here, upon careful review of the record, I conclude that the ALJ failed to explicitly consider each of the *Burgess* factors in evaluating Dr. Abellard's opinion, thus committing procedural error. See Estrella, 925 F.3d at 96. Plaintiff argues that this procedural error was not harmless because the ALJ failed to give "good reasons" for rejecting Dr. Abellard's opinion. Dkt. #20, at 12-16. I agree.

*First*, the ALJ discounted Dr. Abellard's opinion as inconsistent with therapy notes from LCSW Mario Passaro contained in Exhibit 13F. R. 22, 401-516. Plaintiff began treatment with LCSW Passaro on September 23, 2016, pursuant to a referral from Dr. Abellard. R. 411. Plaintiff engaged in a regular course of treatment with LCSW Passaro through April 19, 2017, at which time LCSW Passaro noted plaintiff's case would be closed because he had "achieved full benefit from treatment." R. 514. As the ALJ noted, LCSW Passaro's treatment notes reflect

---

[4] Although the SSA revised its rules to eliminate the "treating physician rule," it remains applicable to claims filed before March 27, 2017. See, e.g., Salati v. Saul, 415 F. Supp. 3d 433, 447 (S.D.N.Y. 2019).

-7-

essentially unremarkable mental status examination findings, with the exception of plaintiff's mood (which was usually anxious or sad, and occasionally distressed) and his insight (consistently fair). Thus, the ALJ discounted Dr. Abellard's opinion as inconsistent with LCSW Passaro's treatment notes. However, plaintiff ended treatment with LCSW Passaro on April 19, 2017 – more than one year prior to Dr. Abellard's operative opinion (the June 6, 2018 letter). During that time, plaintiff continued treatment with Dr. Abellard. R. 383-98. The ALJ did not directly address Dr. Abellard's treatment notes in discounting her opinion. R. 22. Earlier in his decision, however, the ALJ stated "treating notes in 2018 reflect consistently good mental status examinations, with the claimant displaying an anxious mood and labile affect at times." R. 20. This characterization of the findings reflected in Dr. Abellard's notes is misleadingly sanguine. Dr. Abellard's treatment notes (from sixteen sessions with plaintiff between July 22, 2017 and April 25, 2018) reflect frequent difficulties with sleep and appetite, frequent behavior disturbances (agitation and/or impulsivity), frequent mood disturbances (anxious, anxious and sad, or irritable), frequently labile or constricted affect,[5] frequent hyperverbal speech, consistently limited insight and judgment and consistently fair impulse control. R. 393-98. The ALJ's reliance on year-old treatment records, coupled with his mischaracterization of subsequent treatment records which support Dr. Abellard's opinion that plaintiff's symptoms are continuing

---

[5] A labile affect is defined as "rapid shifts in outward emotional expressions." *Farlex Partner Medical Dictionary* © Farlex 2012, available at https://medical-dictionary.thefreedictionary.com/labile+affect (accessed September 23, 2020). A constricted affect (also known as restricted affect) is defined as "reduction in the intensity of affect, to a somewhat lesser degree than is characteristic of blunted affect." *Miller-Keane Encyclopedia and Dictionary of Medicine, Nursing and Allied Health* (7th Ed,), © 2003 by Saunders, an imprint of Elsevier, Inc. (all rights reserved), available at https://medical-dictionary.thefreedictionary.com/restricted+affect (accessed September 23, 2020).

and deteriorating, is problematic:

> The ALJ made no attempt to "reconcile" or "grapple with" the apparent longitudinal inconsistencies in [plaintiff's] mental health – one of the motivations behind *Burgess*'s procedural requirement of explicit consideration of "the frequen[cy], length, nature, and extent of [a physician's] treatment." *See Selian*, 708 F.3d at 418-19. This failure is especially relevant here because the first *Burgess* factor, and therefore evidence supporting its satisfaction, is of heightened importance in the context of [plaintiff's] claimed impairment: depression.

Estrella, 925 F.3d at 97.

*Second*, the ALJ's myopic reliance on plaintiff's ability to drive and care for his disabled mother is misplaced. The ALJ cites to a function report (Exhibit 7E) to support his proposition that plaintiff "has the mental wherewithal to care for his disabled mother." R. 22. That function report, however, states only that plaintiff "watch[es] over" his mother and "assist[s] her to the restroom at night." R. 189. The Commissioner correctly notes that the record reflects several other instances where plaintiff stated that he provides home care for his mother, who had a stroke in 2011. R. 240, 411. 344 348. However, apart from these general statements (and plaintiff's statement that he helps his mother to the restroom at night), there is no evidence that plaintiff provides a level of care for his mother consistent with an ability to to perform basic mental activities of work on a day-to-day basis in a regular work setting. Similarly, the record does not support the ALJ's reliance on plaintiff's ability to drive. Although plaintiff stated that he knows how to drive but does not currently drive because he does not have a car, he also stated that the has not driven for "[a] couple of years." R. 43, 191. In other words, there is no record evidence that plaintiff *presently* drives. The Commissioner contends that the ALJ properly focused on plaintiff's *ability* to drive, and cites two cases for the proposition that courts "have found that the ability to drive requires a level of concentration that is inconsistent with disability." Dkt. #22, at 22 (citing Urbanak v. Berryhill, No. 17 Civ.5515, 2018 WL 3750513, at

*19 (S.D.N.Y. July 18, 2018); Heintz v. Comm'r of Soc. Sec., 201 F. Supp.3d 413, 418 (S.D.N.Y. 2016)). Those two cases are clearly distinguishable from the case at bar, because each involves a plaintiff with a *physical* disability who is *presently* driving. See Urbanak, 2018 WL 3750513, at *1, *13 (plaintiff who suffers "lower back and left leg pain" is "able to drive and drove to the hearing unaccompanied"); Heintz, 201 F. Supp.3d at 417-18 (plaintiff who suffers from fatigue, breathing difficulties and dizziness "currently drives a car occasionally").

In sum, in light of the ALJ's failure to "explicitly consider" each *Burgess* factor before assigning "little weight" to Dr. Abellard's opinion, and the lack of other "good reasons" to support that decision, I conclude that the ALJ traversed the substance of the treating physician rule. Accordingly, the matter is remanded to the Commissioner for reconsideration of the weight accorded to Dr. Abellard's opinion. On remand, the ALJ should apply all four *Burgess* factors in determining the appropriate weight to accord to Dr. Abellard's opinion.

## IV. CONCLUSION

For the reasons set forth above: (1) the Commissioner's motion is **DENIED**; (2) plaintiff's motion is **GRANTED**; and (3) the case is **REMANDED** for further administrative proceedings consistent with this Report and Recommendation pursuant to 42 U.S.C. § 405(g), sentence four.

The Clerk of the Court is directed to terminate the pending motions (Dkt. #19, #21) and close this case.

Dated: September 28, 2020
White Plains, New York

SO ORDERED.

PAUL E. DAVISON, U.S.M.J.